# LEVIN-EPSTEIN & ASSOCIATES, P.C.
---
420 Lexington Ave. • Suite 2525 • New York, NY 10170
T: 212.792.0048 • E: Jason@levinepstein.com

July 15, 2020

*<u>Via Electronic Filing</u>*
The Honorable Magistrate Judge Ramon E. Reyes, Jr.
U.S. District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Laureano-Capellan v. Chirichella et al.*
     <u>**Case No.: 20-cv-00360**</u>

Dear Honorable Magistrate Judge Reyes:

  This law firm represents Plaintiff Lewy Laureano-Capellan (the "**Plaintiff**") in the above-referenced action. This letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $50,000.00. By notice filed on June 5, 2020, the Eastern District of New York Mediation Office advised the Court that the parties had reached a settlement of the action. [June 5, 2020 Report of Mediation].

  A copy of the executed Settlement Agreement, is attached hereto as "**Exhibit A**."

  A copy of the executed Confessions of Judgment is attached hereto as "**Exhibit B**."

  A copy of the undersigned's law firm's contemporaneous billing record is attached hereto as "**Exhibit C**."

  A Stipulation of Dismissal is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

## I. Procedural History

  On January 22, 2020, Plaintiff filed a Complaint against Defendants Wayne Chirichella, Russell Dyson, and Amber Elevator Inspections Inc. d//b/a Allboro & Amber Elevator Inspections (collectively, the "**Defendants**"), asserting claims of minimum wage and overtime wage violations, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("**FLSA**") and the New York Labor Law, N.Y. Lab. Law § 650 *et seq*. ("**NYLL**"), as well as spread-of-hours pay, Wage Theft Prevention Act ("**WTPA**"), and unlawful deductions violations pursuant to the NYLL. [*See* Dckt. No. 1].

  Plaintiff was employed as a sales representative and general worker at Defendants' elevator service and repair company, Allboro & Amber Elevator Inspections, from January 1, 2019, through and including October 25, 2019. *Id*. Plaintiff asserts that from January 1, 2019 until on or about October 25, 2019, he regularly worked seven (7) days a week, 10 hours each day, for a total period of 70 hours per week. *Id*. Plaintiff asserts that despite regularly working 70 hours

per workweek, he received the same pay each week regardless of the number of hours he worked, which he alleges failed to compensate him at the statutorily-required rate of one and one-half his regular rate of pay for hours worked over forty per workweek. *Id*. Plaintiff also claims that he did not receive "spread-of-hours" pay on days when his shifts stretched over ten hours, and wage notices or wage statements as required by the WTPA. Plaintiff also claims that on several occasions, Defendants made unlawful deductions from Plaintiff's wages. For example, on at least four occasions, Defendant deducted $200 - $300 from Plaintiff's salary without his consent.

Defendants deny each of these claims and further contend that Plaintiff worked far fewer hours. Defendants further asserted that the records of payment and time records undermined the Plaintiff's factual contentions.

### A. Court-Ordered Mediation & Informal Discovery

On April 9, 2020, the Court referred the parties to mediation. [*See* Dckt. No. 12]. Prior to the Court-ordered mediation, the Court ordered the parties to engage in informal discovery relating to the claims and defenses in the action. *Id*. Defendants were ordered to exchange, *inter alia*, "time sheets or other time records and payroll records in the Defendants' possession, custody, or control that pertain to work Plaintiff performed during the period for which the Plaintiff claims unpaid wages." *Id*.

On May 7, 2020, Defendants exchanged eleven (11) responsive documents pursuant to the Court's April 9, 2020 Order. Six (6) of these eleven (11) documents were purported to be Plaintiff's "time sheets" and "paystubs". These records appeared, on their face, to have been created *ex post facto*, after the filing of the Complaint.

On May 27, 2020, the undersigned made a demand for Defendants to produce all electronically stored information of Defendants' payroll records, including metadata, for the relevant period of Plaintiff's employment with Defendants. This information was critical, in light of Defendants' production of purported "time sheets" and "paystubs" for Plaintiff, despite Plaintiff's allegations that he was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, and that Plaintiff never received a paystub from Defendants during the entirety of his employment with Defendants.

Electronically stored information of Defendants' payroll records for Plaintiff's relevant period of employment was necessary to determine when the documents were created. *See Huang v. Lin, et al.*, 2016 WL 6905940, at 2 (E.D.N.Y. Nov. 23, 2016) (holding a hearing as to sanctions and fraud on the court after defendants submitted what appeared to be false wage/time records); *Yu Chen v. LW Restaurant, Inc*., 2011 WL 3420433, at *1 (E.D.N.Y. Aug. 3, 2011) (ordering defendant corporation to produce the requested ESI that verified the date that the payroll records were created).

2

### B. A Settlement Was Reached at the June 3, 2020 Mediation

A mediation session was held on June 3, 2020 before Mediator Joseph DiBenedetto. Plaintiff and Defendants participated at the mediation with their respective counsel. At the June 3, 2020 mediation, the parties, after several hours of negotiation, reached an agreement, which was memorialized in a writing.

The parties reached a resolution in principal to settle this matter for a total sum of $50,000.00 (the "**Settlement Amount**") to be paid out in two installments.

The settlement is fair, reasonable, and the produce of arm's length negotiations between counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

## II.   The Settlement Agreement is Fair and Reasonable

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

### 1. The Settlement Sum is Substantial and Fair Given the Plaintiff's Range of Recovery

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiff's proposed ultimate recovery represents approximately 70.97% of Plaintiff's estimated maximum recovery for unpaid wages, liquidated damages, and wage notice and wage statement penalties. See *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL

4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery)

The method and formula for the derivation of the Plaintiff's reasonable range of recovery assumes the following, after considering Defendants' documentation of hours worked and compensation received:

(i) Plaintiff would have a low likelihood of recovery for the allegations of unpaid minimum wages given that Defendants produced records for that period that show that Defendants were a "small employer" under 12 NYCRR 142;

(ii) Plaintiff would have a low likelihood of recovery for the allegations of spread-of-hour wages given that Plaintiff's derived regular rate of pay was arguably greater than the prevailing minimum wage during the relevant period;

(iii) Plaintiff would have a high likelihood of recovery for the allegations of unpaid overtime wages given that Defendants had questionable time and payroll records for that period;

(iv) Plaintiff was paid a fixed salary per week;

Taking these assumptions into account, the undersigned computed that the unpaid overtime and unlawful deductions premium yielded the aggregate amount of $30,225. The undersigned yielded this amount by subtracting Plaintiff's lawful wages (overtime premium and unlawful deductions), by Plaintiff's paid wages.

After liquidated damages, and addition of the wage notice and wage statement penalties, Plaintiff's expected recovery would be $70,450.

The Settlement Agreement requires that Defendants pay Plaintiff the aggregate settlement sum in the amount of $50,000 to resolve the case in two installments: an initial payment of $40,000 due within thirty (30) days after Court approval, and a final payments of $10,000 due on or before the latter of: (i) December 31, 2020, or (ii) thirty (30) days after Court approval, should said approval occur after December 1, 2020. Each payment of the Settlement Amount shall be allocated between Plaintiff and the undersigned law firm as follows: after deducting costs and disbursements in the amount of $875.00, the undersigned law firm shall receive 1/3 of every payment received, and Plaintiff shall receive 2/3 of every payment received, *to wit*:

| **Payment No.** | **Costs** | **Attorneys' Fees** | **Plaintiff's Recovery** |
|---|---|---|---|
| Payment 1 ($40,000) | $875 | $13,041.67 | $26,083.33 |
| Payment 2 ($10,000) | $0 | $3,333.33 | $6,666.67 |

After attorneys' fees and expenses, Plaintiff will receive payments totaling **$32,750.00** (the **"Settlement Amount"**).

Plaintiff believes that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

The number of overtime hours Plaintiff worked was a seriously contested issue that made the settlement of the claims asserted in this action difficult. The parties engaged in discovery to address various issues related to liability and damages, and to gauge the authenticity of Defendants' record production. In the course of informal discovery, Defendants provided two categories of documents that affected Plaintiff's possible range of recovery: (1) time and payroll records and (2) checks that Plaintiff purportedly cashed.

The undersigned law firm conducted an analysis based on the six-year maximum compensable period of time under the NYLL while taking into consideration Defendants' production of records. Through the course of the mediation process and the discovery process, the key issue that evolved concerned whether or not Plaintiff was paid appropriate overtime premiums for all hours worked and renumeration for unlawful deductions, which Plaintiff calculated to be $30,225.00

The net proceeds of the Settlement Agreement at the very least compensate Plaintiff for approximately 70.97% of Plaintiff's estimated maximum recovery for unpaid wages, liquidated damages, and wage notice and wage statement penalties, assuming that the finder of fact accepted Plaintiff's version of events, after considering Defendants' documentation of hours worked and compensation received. The Settlement Amount would fully compensate Plaintiff for his unpaid wages, which Plaintiff calculated to be $30,225.

Given the risks these issues present, the Settlement Amount is reasonable.

**2. The Settlement Agreement Avoids the Incurrence of Additional Expenses**

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely the total number of hours worked by Plaintiff. In that regard, Defendants allege that Plaintiff regularly worked no more than forty hours per week, and was paid time and one-half whenever he worked over forty hours in a workweek. During the discovery phase of this case, Defendants relied on time sheets and disclaimers signed by Plaintiff, which Plaintiff rejected as inaccurate. If the trier of fact determined that Plaintiff worked fewer hours as alleged, it is likely that the overtime and spread-of-hours pay due to Plaintiff would be greatly reduced. Proceeding to trial would consume significant amounts of time and resources, and Plaintiff faces the hurdles of rebutting Defendants' time records for certain periods of time. *See Garcia v. Jambox, Inc.,* 2015 WL 2359502, at *3 (S.D.N.Y. 2015) (Plaintiff's burden on the rebuttable presumption is high where Defendants have produced records).

The continued litigation of this case would necessitate no less than four (4) depositions, and a trial. The associated costs the continued prosecution of this case would necessitate the

incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### 3. The Seriousness of the Litigation Risk Faced by both Parties is High

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335.* This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages, *to wit*: prevailing on the amount of overtime allegedly worked, the amount of alleged underpayment of the overtime premium; and the amount of spread-of-hours compensation allegedly owed.

Given that Defendants did not maintain accurate contemporaneous payroll or time records relating to Plaintiff's employment, Plaintiff likely would have presented sufficient evidence to show the amounted of uncompensated work alleged in the Complaint as a matter of just and reasonable inference. *See D'Arpa,* 2013 U.S. Dist. LEXIS 85697, at *51 (citing 29 U.S.C. § 211(c)). "'[A]t summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount of [the uncompensated work] as a matter of just and reasonable inference.'" *Id.* (*quoting Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 [2d Cir. 2011]).

Additionally, the risk that Defendants would not be able to satisfy a judgment in excess of the settlement amount weighs heavily in favor of final approval. *See* Hernandez v. Loco 111 Inc., 2017 WL 6205809, at *2 (S.D.N.Y. 2017) (*citing Howard v. Don Coleman Advert. Inc.*, 2017 WL 773695, at *1 [S.D.N.Y. 2017]). The parties participated in sufficient discovery, such that they were well positioned to evaluate the risk of nonpayment of any judgment due an inability to pay. For example, Defendants' counsel represented that the business is operating at a limited capacity since the COVID-19 pandemic. This information strongly suggests that Defendants would not be able to pay a judgment any greater than the Settlement Amount. The settlement allows Plaintiff to avoid the risk of a pyrrhic victory as the Defendants would likely be unable to pay a significant judgment.

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

### 4. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Mediation

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel, demonstrate there was no fraud or collusion. See *Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v.*

6

*7-Eleven, Inc.*, 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiff is satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

The undersigned law firm has successfully defended dozens of corporations and businesses owners in FLSA actions in the Eastern and Southern Districts of New York. *See, e.g., Shimunov v. A & Y Cafe Inc.* [17-cv-04714] (E.D.N.Y 2018); *Rivera v. The Ave Lunch Box, Inc. et al* [17-cv-07154] (E.D.N.Y 2018); *Espinal, et al v. Bi-County Auto and Truck Salvage, Corp., et al* [17-cv-04700] (E.D.N.Y 2018); *Rivera v. The Crabby Shack, LLC* [17-cv-04738] (E.D.N.Y 2018); *Peralta v. JD Beverage Corp. et al.* [18-cv-00118] (E.D.N.Y 2018); *Wee Kwang Oh v. Jema Inc., et al.*; [17-cv-02964] (E.D.N.Y 2018); *Fabre v. S.N.A. Concrete Pumping Corp. et al* [17-cv-05303] (E.D.N.Y 2018); *Simon v. Zarman Surgical Supply, Inc. et al* [17-cv-05112] (E.D.N.Y 2018); *Garcia Hernandez et al v. D&D Alba ConstructionRen Corp. et al* [18-cv-05787] (S.D.N.Y 2018); *Smith v. Digital Social Retail, Inc., et al* [18-cv-06602] (S.D.N.Y 2018); *Mondragon v. El Puerto De Acapulco Bar Restaurant Inc. et al* [17-cv-05613] (E.D.N.Y 2019); *Suarez v. McQuilling LP, et al* [ 17-cv-611] (S.D.N.Y 2018); *Hugo Ortega Hernandez et al v. Muzzarella Inc. et al* [17-cv-06164] (S.D.N.Y 2018); *Clarke v. Pure Green NYC 8th Street Corp, et al* [18-cv-00532] (S.D.N.Y 2018).

Moreover, the Settlement Agreement protects Plaintiff from the risk of default by requiring Defendants to execute Affidavits of Confession of Judgment, which would be entered in the amount due with a penalty in case of default. *See* Ex. B.

### III. The Allocation for Attorneys' Fees and Costs is Reasonable

As Plaintiff's counsel, the undersigned agreed to be paid a 1/3 contingency fee, agreed to by Plaintiff in his Retainer Agreement, which is reduced to writing and is signed by him, a copy of which is attached as "**Exhibit D**".

Disbursements we have paid are limited to the court filing fee ($400), process server fees ($175), and the mediator's fee ($300), which total $875.00. The undersigned deducted that amount from the Settlement Amount, and divided the difference by three, with one-third for legal fees and two-thirds to Plaintiff. Proof of disbursements are included in "**Exhibit E**".

Since the filing of the case, Plaintiff's counsel expended considerable time and effort in the prosecution of this case, including the attendance at a mediation held on June 3, 2020; multiple in-office and telephonic conferences with Plaintiff, the drafting of a motion to compel electronically stored information; the analysis and review of Defendants' time and payroll records; and multiple telephonic conferences with Defendants' attorney. *See* Ex. C.

A brief biography of each attorney who performed billed work in this matter is as follows:

Joshua D. Levin-Epstein, Esq. is billed at the rate of $450 per hour, which is his standard billing rate for wage-and-hour matters paid on an hourly basis. He is the founder and managing member of Levin-Epstein & Associates, P.C., and has been in practice since 2006.

Prior to founding the firm, Mr. Levin-Epstein was part of the Business Solutions, Governance, Restructuring & Bankruptcy practices at international and national law firms where

he represented constituents in complex litigation and transactional matters. He also served as Law Clerk to the Honorable Alan H.W. Shiff in the United States Bankruptcy Court for the District of Connecticut (Bridgeport Division). Mr. Levin-Epstein received a B.S. in Foreign Service from the Edmund A. Walsh School of Foreign Service at Georgetown University. At Georgetown University, Mr. Levin-Epstein received several merit-based scholarship awards. Mr. Levin-Epstein received his J.D. from The University of Michigan Law School.

Mr. Levin-Epstein previously chaired the Labor and Employment Subcommittee for the New York City Bar Association's Hospitality Law Committee. He authored a White Paper on the history of the development of local Community Boards in New York City.

Jason Mizrahi, Esq. is an associate at Levin-Epstein & Associates, P.C., and is billed at the rate of $225 per hour. At the time Plaintiff's engagement agreement was signed, this was his standard rate for wage and hour matters on which he is paid at an hourly rate. Mr. Mizrahi earned his B.A. from the University of Maryland, and his J.D. from Brooklyn Law School in 2016. Following law school, he practiced as an associate at a boutique law firm concentrating in labor and employment law. He was previously In-House Counsel and Human Resources Manager for a wholesale baking company headquartered in the Bronx, with global operations in China, South Korea and the United States.

The firm has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Rivera v. The Crabby Shack, LLC* [17-cv-04738] (E.D.N.Y 2019) at Dckt. No. 49 [successfully arguing motion to enforce and approve settlement agreement on behalf of defendants]*; Reyes et al v. The Picnic Basket, Inc. et al.* [18-cv-00140] (S.D.N.Y 2018) (successfully opposing Plaintiff's motion for conditional certification); *Pugh v. Meric* [18-cv-3556] (S.D.N.Y 2019) (successful bench trial) at Dckt. No. 107 (Decision and Order of the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages), and Dckt. No. 118 (Decision and Order of the Hon. Senior Judge Denise Cote, reducing attorneys' fees award of $8,000 to $800).

The firm's FLSA experience includes the following cases in the Southern and Eastern Districts of New York:

| *Ramos v. 175th Street Laundromat, Inc. et al* | 19-cv-9545 |
| --- | --- |
| *Shimunov v. A & Y Cafe Inc* | 17-cv-04714 |
| *Roman et al v. ABC Corp. et al* | 19-cv-6628 |
| *Oswaldo et al v. Kim et al* | 18-cv-3140 |
| *Fafara v. Arenas, Parks & Stadium Solutions, Inc. et al* | 18-cv-09294 |
| *Rivera v. The Ave Lunch Box, Inc. et al* | 17-cv-07154 |
| *Elizabeth Gonzalez et al v. Banaco II LLC et al* | 19-cv-05602 |
| *Pugh v. Bestall Moda, LLC* | 27036/2017E |
| *Espinal, et al v. Bi-County Auto and Truck Salvage, Corp., et al* | 17-cv-04700 |
| *Marcos v. Café Riviera Inc. et al* | 19-cv-03981 |

| | |
|---|---|
| *Espinosa v. Carefree Painting Associates, Inc. et al* | 19-cv-01150 |
| *Rivera v. The Crabby Shack, LLC* | 17-cv-04738 |
| *Garcia Hernandez et al v. D&D Alba ConstructionRen Corp. et al* | 18-cv-05787 |
| *Espinobarros Basurto et al v. Diala Deli Gourmet Corp. et al* | 19-cv-09792 |
| *Smith v. Digital Social Retail, Inc., et al* | 18-cv-06602 |
| *Pineda et al v. Dique Pic Productions LLC et al* | 19-cv-03168 |
| *Basurto et al v. Eda Food Inc. et al* | 18-cv-8858 |
| *Mondragon v. El Puerto De Acapulco Bar Restaurant Inc. et al* | 17-cv-05613 |
| *Lucero v. Gallitos Mexican Urban Kitchen Inc* | 18-cv-01542 |
| *Franco v. Galvis & Musa, Corp. et al* | 19-cv-3828 |
| *Seo v. I.P.T Name and Design Inc. (d.b.a Tyche NYC) et al* | 19-cv-2202 |
| *Peralta v. JD Beverage Corp. et al.* | 18-cv-00118 |
| *Wee Kwang Oh v. Jema Inc., et al.* | 17-cv-02964 |
| *Flores-Colin v. La Oaxaquena Restaurant Corp. et al* | 18-cv-02966 |
| *Reyes v. Labra Telecom, Inc. et al* | 19-cv-09955 |
| *Singh v. Lintech Electric, Inc. et al* | 18-cv-05780 |
| *Evans v. Manhattan Carpets Inc. et al* | 19-cv-10298 |
| *Suarez v. McQuilling LP, et al* | 17-cv-6113 |
| *Pugh v. Meric* | 18-cv-03556 |
| *Hugo Ortega Hernandez et al v. Muzzarella Inc. et al* | 17-cv-06164 |
| *Carlos Alvarado et al v. New Rams Deli Plus Inc. et al* | 18-cv-08650 |
| *Rodriguez v. New York Fast General Contracting Corp, et al* | 18-cv-04072 |
| *Carter v. Nite Corporation* | 19-cv-4511 |
| *Alvarado, et al. v. Organic Food Nautral Juices & Coffee Shop, Corp., et al* | 18-cv-03952 |
| *Chincha v. Patel* | 17-cv-06127 |
| *Reyes et al v. The Picnic Basket, Inc. et al.* | 18-cv-00140 |
| *Ortiz Ochoa et al v. Prince Deli Grocery Corp. et al* | 18-cv-09417 |
| *Clarke v. Pure Green NYC 8th Street Corp, et al* | 18-cv-00532 |
| *Coronel v. Royal Katsuei Inc* | 19-cv-3054 |
| *Buestan v. Ryszard Food Distributor, Inc. et al* | 19-cv-04273 |
| *Fabre v. S.N.A. Concrete Pumping Corp. et al* | 17-cv-05303 |
| *Obispo Guinea v. Sagal Meat Market VII Inc. et al* | 19-cv-03448 |

| | |
|---|---|
| *Pacheco v. Sammy Dry Cleaners, Inc. et al* | 17-cv-7931 |
| *Cervantes Isidoro et al v. Siam SMP Inter, Inc. et al* | 19-cv-04054 |
| *Acharya v. 7-Eleven, Inc., et al* | 18-cv-08010 |
| *Hernandez Alejandro v. Steven Stile Farmers Mkt No 2 LLC et al* | 19-cv-09504 |
| *Strulowitz v. Flavor Boutique 796 Inc. et al* | 18-cv-08382 |
| *Reyes et al v. Tava Cafe LLC et al* | 18-cv-10210 |
| *Ullo v. RFR Holding L.L.C. et al* | 18-cv-11281 |
| *Anselmo Lopez et al v. Uno Express Cleaners Inc. et al* | 18-cv-10737 |
| *Rojas et al v. Velkonel Restaurant, Inc. et al* | 17-cv-6616 |
| *Simon v. Zarman Surgical Supply, Inc. et al* | 17-cv-05112 |
| *Bellas v. Abraham and Abraham Attorneys and Counselors at Law, LLC et al* | 19-cv-04901 |

The contingency fee in this case should be approved because it is the fee Plaintiff agreed upon in his retainer agreement in his dominant language. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written.").

Moreover, the one-third contingency is the fee which courts in this District consider to be presumptively fair in FLSA cases. *See, e.g., Castillo v. Cranes Express Inc.*, 2018 WL 7681356, at *5 (E.D.N.Y. 2018) (same); *Vidal v. Eager Corp.*, 2018 WL 1320659, at *2 (E.D.N.Y. 2018); *Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. 2017); *Hdir v. Salon de Quartier*, 2017 WL 8950426, at *2 (E.D.N.Y. 2017) ("Courts in this district using the percentage method have found a fee award of one third of the settlement amount to be reasonable".) (*citing Romero v. Westbury Jeep Chrysler Dodge, Inc.*, 2016 WL 1369389, at *2 [E.D.N.Y. 2016]); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 WL 6621081 at *3 (E.D.N.Y. 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277 at *2 (E.D.N.Y. 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit");

Based on this, the requested fee of one-third of plaintiff's recovery should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

### IV. The Agreement Satisfies All Other Factors Considered for Approval

The terms of the Settlement Agreement are consistent with Cheeks. For example, the release in the Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions. The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law after the parties exhausted negotiations at a

10

mediation before an experienced alternative dispute resolution practitioner and following extensive discovery.

In sum, the settlement is fair and reasonable, providing Plaintiff with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

LEVIN-EPSTEIN & ASSOCIATES, P.C.

By: */s/ Jason Mizrahi*
    Jason Mizrahi, Esq.
    420 Lexington Ave., Suite 2525
    New York, NY 10170
    Tel. No.: (212) 792-0048
    Email: Jason@levinepstein.com
    *Attorneys for Plaintiff*